NO. 07-06-05714

2007 JUN -1 PM 3:13

BY _____
DEPUTY

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO EQUITY INVESTMENTS, L.L.C. | § § § | IN THE DISTRICT COURT OF |
| vs. | § § | MONTGOMERY COUNTY, TEXAS |
| MORAN INDUSTRIES, INC., and JAMES HAFEMEISTER | § § § | 9th JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes JOHN HEIDEMAN and KILIMANJAHRO EQUITY INVESTMENTS, L.L.C. as Plaintiffs, to file this Original Petition complaining of Defendants, Moran Industries, Inc. and James Hafemeister, and for cause of action would show the Court as follows:

### I. Discovery Control Plan

1.00   Discovery is intended to be conducted under Level 2 of the Texas Rules of Civil Procedure.

### II. Parties

2.00   Plaintiffs are John Heideman and Kilimanjahro Equity Investments, L.L.C.

2.01   Defendant, Moran Industries, Inc., a foreign corporation organized and existing under the laws of the State of Illinois, whose principal office is located at 4444 West 147th Street, Midlothian, Illinois 60445, who may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because defendant engages in business in Texas but has not designated a resident agent for service of process here. Service of process is not being requested at this time.

2.02     Defendant, Jim Hafemeister, is a natural person who may be served with process at 3802 Honea-Egypt Road, Montgomery, Texas 77316. Service of process is not being requested at this time.

### III. Venue and Jurisdiction

3.00     Venue is proper in this Court because Defendant James Hafemeister is a resident of Montgomery County, Texas. The damages sought in this suit are greater than the minimum jurisdictional limits of this Court.

### IV. Statement of Facts

4.00     Defendant, Moran Industries, Inc., is one of the largest and fastest growing franchisors of automotive aftermarket centers in the country. Included within its family of franchises are Mr. Transmission, Multistate Transmissions, Milex Complete Auto Care, Dr. Nick's Transmissions and Alta Mere. It boasts of great opportunities to succeed in an exciting and growing business within a "family" relationship between the franchisor and the would be franchisee. Defendant James Hafemeister ("Hafemeister") is purportedly a franchisee and area coordinator of Moran. Part of his duties to Moran require him to develop certain markets for Moran. Accordingly, Hafemeister and Moran have a common interest in opening franchise transmission shops as well as keeping franchise transmission shops open. Each profited by the sale of the enterprise made the basis of this lawsuit.

4.01     Moran removed the prior operators and took possession of Mr. Transmission/Milex Car Care, Store No. 510 on or around September 2, 2005. The shop was subsequently turned over to Hafemeister. According to Moran documents, Mr. Transmission/Milex Car Care, Store No. 510, located at 6821 S. Kirkwood, Houston, Texas 77072, was a poorly performing location which was

sold many times by Moran and/or Hafemeister to numerous individuals. The prior owners of Store No. 510 were unable to make it a profitable shop and chose to walk away from the store after losing much money.

4.02   On or about December 24, 2005, John Heideman purchased franchise licenses for Mr. Transmission and Milex Car Care by Moran for $32,500.00 without a location for this anticipated business. Moran, in return, promised to assist Mr. Heideman in finding a real estate developer who would present potential future "new shop" locatations for lease. When no real estate developers could be located who were interested in purchasing land and constructing a new shop building for lease to Heideman, Moran and Hafemeister solicited Heideman to purchase an existing business for sale located at 6821 S. Kirkwood, Houston, Texas, and execute a lease of the premises thereof. Moran boasted the benefits of this location to include an existing commercial client base; a strong, positive, and well-known business presence in the geographical area, and a "faster track" to starting to receive profits sooner because the construction of a new shop building would take six to nine months to complete. Moran and Hafemeister offered the existing business at 6821 S. Kirkwood to Heideman for $192,000 to which Heideman agreed. As part of the agreement to purchase, a part of the sales price was to be financed by a third party lender. However, a lender willing to finance the purchase could not be found due to the length of time (less than 12 months) the business was owned by Hafemeister. Moran, in an effort to save the sale, agreed to finance the sale by having Heideman execute a promissory note. To entice Heideman to consummate the sale, Moran and/or Hafemeister represented that Store No. 510 had been turned around and was consistently doing over $7,000.00 per week in sales. This representation materially overstated the sales and profits produced by the

3

shop. Defendants further represented they would provide assistance in the form of on-site consulting services from Hafemeister.

4.03    On July 28, 2006, Kilimanjahro Equity Investments, L.L.C. ("Kilimanjahro") purchased the assets located at Store No. 510 from Micah Consulting Division, L.L.C. ("Micah"), a company solely owned and operated by Hafemeister, for the amount of $192,000.00. The amount of $10,000.00, which at the time of the sale was held by Hafemeister, was paid to Micah while $30,000.00 was paid to Hafemeister. The remainder of the purchase price was paid by promissory note in the amount of $119,500.00 in favor of Moran signed by Heideman and Hafemeister. As part of the agreement to buy the assets, Hafemeister was to provide six (6) months of consulting services to Heideman to ensure the success of the enterprise. The promissory note was to be paid by Heideman through the successful business operations of Store No. 510.

4.04    In reliance upon Moran's and Hafemeister's representations, Heideman agreed to consummate the purchase of Store No. 510 which was primarily comprised of a leasehold estate, inventory, equipment and a purported client base of nearly thirty (30) commercial accounts.

4.05    Since assuming control over Store No. 510, Heideman has learned that the transmission shop did not consistently generate $7,000.00 per week in sales and never did while operated by Hafemeister. Hefemeister also has not provided the consulting services he promised. In addition, Moran has not provided the kind of franchise support as represented prior to the purchase. Heideman is making every effort to make Store No. 510 profitable but is losing money nearly every month. Store No. 510 simply does not make the money as represented by Moran and Hafemeister.

4

## V. Statutory Fraud

5.00  Plaintiffs specifically incorporate paragraphs 4.00 through 4.05.

5.01  During the transaction, Defendants made false representations of material fact to Heideman.

5.02  Defendants made the false representations for the purpose of inducting Heideman to purchase the assets of Store No. 510 as well as executing a promissory note in favor of Moran.

5.03  Plaintiffs relied on Defendants' false representations by entering into the contract to purchase the assets of the business and the franchise.

5.04  Defendants' false representations directly and proximately caused injury to Plaintiffs.

5.05  Plaintiffs seek unliquidated damages which are in excess of the minimum jurisdictional limits of this Court.

5.06  Defendants violated Texas Business & Commerce Code Section 27.01, which is the basis of this suit, with actual awareness of the falsity of Defendants' representations or promise, which entitled Plaintiffs to exemplary damages under Section 27.01(c).

5.07  Plaintiffs are entitled to recover reasonable and necessary attorney fees, expert witness fees, and costs for copies of depositions under Texas Business & Commerce Code Section 27.01(e).

## VI. Common Law Fraud

6.00  Defendants represented to Plaintiffs the facts contained within paragraph 4.00 through 4.05. These facts were material to Plaintiffs' decision to purchase the assets and franchise which

comprise the business known as Store No. 510. These representations were false statements of fact which Defendants knew were false when made.

6.01 Defendants intended for Plaintiffs to rely on the false representations. Plaintiffs did rely on the Defendants' false representations when he decided to purchase the assets and franchise which comprise the business known as Store No. 510.

6.02 Defendants' false representations directly and proximately caused injury to Plaintiffs.

## VII. Deceptive Trade Practices Act (DTPA)

7.00 Plaintiffs are consumers under the DTPA because they acquired goods and services by purchase from Defendants. Defendants violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiffs relied on to their detriment. Specifically, Defendants violated the DTPA by committing one or more of the following:

    a. representing that goods or services have sponsorship, approval, characteristics, uses, benefits, or quantities they did not have;

    b. representing that goods or services are of a particular standard, quality, or grade, when they were of another;

    c. failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed; or

  d. engaging in an unconscionable action or course of action that, to Plaintiffs' detriment, took advantage of their lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

7.01 It was impracticable for Plaintiff to give Defendants written notice under Texas Business & Commerce Code §17.50(a) because Plaintiff needed to file suit to prevent Defendants from removing Plaintiffs from Store No. 510 and assuming its operation.

7.02 Defendants' wrongful conduct was a producing cause of Plaintiffs' injuries. Plaintiffs seek recovery of unliquidated damages which are in excess of the minimum jurisdictional limits of this Court.

7.03 Defendants acted knowingly and/or intentionally, which entitles Plaintiffs to recover treble damages under Texas Business & Commerce Code §17.50(b)(1).

7.04 Plaintiffs are entitled to recover reasonable and necessary attorney fees for prosecuting this suit at the trial court level and any appellate court pursuant to Texas Business & Commerce Code §17.505(d).

## VIII. Negligent Misrepresentation

8.00 Plaintiffs specifically incorporate paragraphs 4.00 through 4.05.

8.01 Defendants' made the representations complained of in the course of a transaction in which the Defendants' had an interest. The Defendants' made the representations for the guidance of Plaintiffs and others similarly situated. Defendants' representations were misstatements of facts which Heideman justifiably relied on when he decided to consummate the purchase of the assets and

7

franchise license. Defendants did not use reasonable care in obtaining or communicating the information.

8.02 Defendants' misrepresentations proximately caused injury to Plaintiffs, which resulted in the damages described in paragraph XII.

### IX. Breach of Contract

9.00 Plaintiffs specifically incorporate paragraphs 4.00 through 4.05.

9.01 Plaintiffs entered into agreements with Hafemeister which pertained to the purchase of Store No. 510. Hafemeister agreed to provide consulting services for a six month period. This was to be of great benefit to Plaintiffs as Hafemeister had more than twenty (20) years in the transmission repair business. Unfortunately, Hafemeister never provided the services. This constitutes a breach of contract for which Plaintiffs sue.

9.02 Plaintiffs entered into agreements with Moran which pertained to the franchise license purchased by Heideman. Moran agreed to provide assistance to Heideman, the franchisee. This was represented to Heidemen to be of great benefit to Plaintiffs as a franchisee in the Moran family of franchises as Moran was the leader in automobile franchises and could assist Heideman in growing his business into a successful enterprise. Unfortunately, Moran never provided the services. This constitutes a breach of contract for which Plaintiffs sue.

9.03 Defendants' conduct proximately caused injury to Plaintiffs, which resulted in the damages described in paragraph XIII.

## X. Agency

10.00   In addition to and without waiving the foregoing, Plaintiffs would show that at the time of the incident mentioned herein, Defendant Hafemeister was the agent of Defendant Moran and was acting within the course and scope of his implied and/or express authority as such agent. Therefore, Defendants Hafemeister and Moran are jointly and severally liable for Plaintiffs' damages under the Doctrine of Respondeat Superior.

## XI. Participatory Liability - Conspiracy

11.00   Each Defendant, in combination with the other Defendants, agreed to work together to sell Plaintiffs the business for a price which was much greater than the market value of the business. In order to do so, it was important for the business to show revenues greater than the business earned. Each Defendant knew that the agreed acts would result in harm to Plaintiffs and, in fact, proximately caused injury to Plaintiffs.

## XII. Joint-Enterprise Liability

12.00   Defendant Moran is liable for the acts of Defendant Hafemeister because at the time of Plaintiffs' purchase of Store No. 510, Defendant Moran was engaged in a joint enterprise. Defendants had an agreement, a common purpose, a community of pecuniary interest in that common purpose, and an equal right to direct and control the enterprise.

## XIII. Damages

13.00   Defendants' acts and/or omissions were the producing or proximate cause of the actual and economic damages sought by Plaintiffs. Plaintiffs suffered the loss of all monies invested

in the business, whether expended as cash or through the accrual of debt. Plaintiffs' damages are in an amount in excess of the minimum jurisdictional limits of this Court.

13.01 The injuries suffered by Plaintiffs resulted from Defendants' gross negligence, malice and actual fraud, which entitle Plaintiffs to exemplary damages under Texas Civil Practices & Remedies Code Section 41.003(a).

13.02 The injuries suffered by Plaintiffs resulted from Defendants' violation of Texas Business & Commerce Code Section 27.01, which forms part of the basis of this suit, with actual awareness of the falsity of Defendants' representation or promise, which entitles Plaintiffs to exemplary damages under Section 27.01(c).

## XIV. Attorney Fees

14.00 Plaintiffs are entitled to recover from Defendants reasonable attorney's fees for the prosecution of this suit and any and all appeals to any appellate court.

## XV. Application for Temporary Restraining Order

15.00 Plaintiffs ask the Court to prevent Defendants from taking possession of any equipment, inventory, or supplies which are used in Kilimanjahro's business or from attempting to remove Plaintiffs from the premises located at 6821 S. Kirkwood, Houston, Texas.

15.01 It is probable that Plaintiffs will recover from Defendants after a trial on the merits because Defendants do not have an interest in the equipment owned by Kilimanjahro and the misrepresentations made by Defendants are substantiated by documents and records.

15.02  If Plaintiffs' application is not granted, harm is imminent because the business will be disrupted and Plaintiffs will immediately lose the income as well as the employees, customers and goodwill.

15.03  The harm that will result if the temporary restraining order is not issued is irreparable because Defendants' actions would cause a disruption of business and leave Plaintiff Heideman without a source of income. Furthermore, the damage to the good will of the business is not easily calculated or ascertainable.

15.04  Plaintiffs seek to prevent Defendants from taking possession of any equipment, inventory, or supplies which are used in Kilimanjahro's business or from attempting to remove Plaintiffs from the premises located at 6821 S. Kirkwood, Houston, Texas. Plaintiffs have no adequate remedy at law because there is no easily ascertainable manner by which to calculate the damages Plaintiffs would suffer from the Defendants shutting down the business. Furthermore, Defendants could dispose of the assets of the business and leave Plaintiffs with claims for damages against Defendants which may be insolvent or whose assets may be out of the reach of creditors.

15.05  Plaintiffs are willing to post bond.

### XVI. Request for Temporary Injunction

16.00.  Plaintiffs ask the Court to set their application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendants.

11

## XVII. Request for Permanent Injunction

17.00 Plaintiffs ask the Court to set their request for a permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants.

## XVIII. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer and that upon final hearing, Plaintiffs recover judgment against the Defendants for their damages as they may appear at trial hereof, together with prejudgment and post-judgment interest, costs of court, and such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

**THE LIVINGSTON LAW FIRM L.L.P.**

By: _____

J. Randall Livingston
State Bar No. 00784485
2603 Augusta, Suite 1000
Houston, Texas 77063
713/888-0011
713/888-0021 (fax)

**ATTORNEY FOR PLAINTIFFS**