CAUSE NO. 07-06-05715-CV

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO | § | IN THE DISTRICT COURT OF |
| EQUITY INVESTMENTS, L.L.C. | § | |
| | § | |
| V. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| MORAN INDUSTRIES, INC. AND | § | |
| JAMES HAFEMEISTER | § | 9th JUDICIAL DISTRICT |

## Defendant Moran Industries, Inc.'s
## Motion to Dismiss or Stay for Forum Non Conveniens

Defendant Moran Industries, Inc.(hereinafter sometimes "Moran") asks this Court to dismiss or stay this lawsuit on grounds of forum non conveniens, based upon a contractual forum selection clause.

### Background

1.      Defendant Moran Industries, Inc. is an Illinois corporation having its principal place of business in Midlothian, Cook County, Illinois. In December 2005, Moran and Heideman executed a written Franchise Agreement, a copy of which is attached hereto as Exhibit "A". In the Franchise Agreement, Heideman specifically agreed and consented to "the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER" licensed under the Franchise Agreement. *Id* and Affidavit of Barbara Moran ("Moran Affidavit"). This case contains no factual dispute about whether the Franchise Agreement was executed by both parties, or about the terms of the contract. Nor is there a contention that Moran fraudulently induced Heideman to enter into the forum selection clause.

2.      Based on Heideman's execution of the Franchise Agreement, Moran has continued to grant Heideman a franchise to operate a Mr. Transmission business at a location to be determined by the parties for a twenty (20) year period. *See* Affidavit of Barbara Moran.

3.      Heideman is in default of his Franchise Agreement and despite repeated demands by

Moran for him to cure such defaults, Heideman has refused to comply with his Franchise Agreement.
*See* Moran Affidavit.

    4.    After negotiations between the parties broke down, on November 1, 2007, Moran sued
Heideman in the United States District Court for the Northern District of Illinois - Eastern Division,
styled *Moran Industries, Inc. v. John Heideman and Kilimanjharo Equity Investments, L.L.C.,* Case
Number 07CV6171 for among other things, breach of the Franchise Agreement. A true and correct copy
of the lawsuit is attached hereto as Exhibit "B". *See also* Moran Affidavit.

    5.    During the negotiations that took place between Moran and Heideman, Heideman had
apparently already filed this suit against Moran and Hafemeister in Montgomery County, Texas on June
1, 2007, although Heideman did not serve Moran with such lawsuit until the end of October 2007.  In
addition to suing Moran, Heideman also sued Hafemeister in the same lawsuit. Hafemeister is also a
franchisee of Moran and executed a franchise agreement with Moran in September 2005, which contains
an identical forum selection clause as that contained in Heideman's, a copy of which is attached hereto
as Exhibit "C". *See also* Moran Affidavit. Moreover, Hafemeister has also had substantial contacts with
the State of Illinois through his franchisor-franchisee relationship with Moran over the course of
approximately the last four (4) years. *See* Moran Affidavit. Because Moran seeks to enforce the forum
selection clause in the Franchise Agreement between the parties, Moran requests that the Court dismiss
this case so that Moran can litigate the case in the county and state contracted for - Cook County,
Illinois. Alternatively, Moran requests that the Court stay this lawsuit until the Illinois litigation is
concluded.

**Argument & Authorities**

    6.    This case should be dismissed because Heideman contractually stipulated to "the
jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any
court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are

connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER" licensed

under the Franchise Agreement. Specifically, the contract entered into by Heideman provided:

> APPLICABLE LAW. The parties have finalized this Agreement in the City of
> Midlothian, County of Cook, State of Illinois, and agree that this contract and their
> actions hereunder shall be governed by and construed in accordance with the laws of the
> State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue
> of the United States District Court for the Northern District of Illinois and/or any court
> of record of Cook County, Illinois, with respect to any proceedings which arise out of
> or are connected in any way with the operation of the MR. TRANSMISSION SERVICE
> CENTER licensed hereunder.

Exhibit "A" and Moran Affidavit.

7.      Therefore, any disputes arising out of or connected in any way to the operation of the Mr.

Transmission Service Center operated by Heideman must be brought in either the United States District

Court for the Northern District of Illinois or any court of record of Cook County, Illinois; therefore,

Illinois law governs. Under Illinois law, the contractual stipulation is enforceable.[1]

8.      The United States Supreme Court has consistently held for more than a quarter of a

century that forum selection clauses are presumptively valid. *See Carnival Cruise Lines, Inc. v. Shute*,

499 U.S. 585, 595 (1991); *M/S Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32

L.Ed.2d 513 (1972). Texas also recognizes the presumptive validity of a forum selection clause. *See*

*Phoenix Network Techs. (Europe) Lmt. v. Neon Systems, Inc.*, 177 S.W.3d 605 (Tex.App.–Houston [1st

Dist.] 2005); *Abacan Tech. Servs. Ltd. v. Global Marine Intern. Servs Corp.*, 994 S.W.2d 839

(Tex.App.–Houston [1st Dist.] 1999, no pet.). In Texas, forum selection clauses are valid and

enforceable if (1) the parties have contractually consented to the exclusive jurisdiction of another state;

---

[1] Forum selection clauses are also enforceable in Texas. *CMS Partners, Ltd. v. Plumrose USA, Inc.*, 101
S.W.3d 730, 732 (Tex. App.–Texarkana 2003, no pet.); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203
(Tex. App.–Eastland 2001, pet. denied). Enforcement of a forum selection clause is mandatory unless the party
opposing it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid because
it was fraudulent or overbroad. *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004).

and (2) the other state recognizes the validity of such provisions. *Id.* In addition, enforcement of a

forum selection clause is mandatory unless the party opposing enforcement "clearly show[s] that

enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud

or overreaching." *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004). To overcome the presumption

of validity of a forum selection clause, the party challenging the forum selection clause has the "heavy

burden" of demonstrating that enforcement of the clause would be unreasonable under the

circumstances. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997).

Contractual consent to exclusive jurisdiction of Illinois.

      9.    First, as discussed above, Heideman and Moran consented to the exclusive jurisdiction

of the State of Illinois for any proceedings arising from or in connection with the Franchise Agreement.

*See* Exhibit "A" and Moran Affidavit. Heideman has violated that forum selection clause contained in

the Franchise Agreement by filing suit against Moran in Montgomery County, Texas. Heideman was

aware of and consented to the forum selection clause at the time he entered into the Franchise

Agreement with Moran. The forum selection clause contained in the Franchise Agreement explicitly

identifies Illinois as the exclusive jurisdiction over any proceedings arising from or in connection with

the Franchise Agreement. *See* Exhibit "A". "A forum selection clause can be a valuable tool because

it allows parties to select, up front, a specific jurisdiction for resolving future disputes, which can reduce

litigation risks and costs." *Phoenix*, 177 S.W.3d at 611 (*quoting* James T. Britton Jr., *A Practitioner's

Guide to Forum Selection Clauses in Texas*, 1 HOU. BUS. & TAX L.J. 79, 80 (2001). In construing a

forum selection clause, "our primary goal is to give effect to the written expression of the parties'

agreement." *Phoenix*, 177 S.W.3d at 615. Moreover, when interpreting contracts, the primary concern

of the court is to give effect to the parties' intentions as expressed in the contract. *Lenape Resources

Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). Clearly the intent of both

Heideman and Moran was for Illinois to have exclusive jurisdiction. The forum selection clause

contained in the Franchise Agreement could not more plainly require that any disputes arising out of the Franchise Agreement be litigated in the State of Illinois. Heideman's present intention is immaterial and the fact that he no longer likes the terms of the Franchise Agreement he willingly entered into is not a reason to excuse him from the forum selection clause, just as he would not be excused from any other provision in the Franchise Agreement. In determining the parties' intentions, intent must be taken from the agreement itself, not from the parties' present interpretation. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981) (quoting *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). The agreement will be enforced as the parties have made it, without regard to whether they contracted wisely. *Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376 (Tex.App.–Fort Worth 2002, pet. denied). Thus, because the Franchise Agreement clearly and explicitly requires proceedings to be brought in an Illinois court, Heideman has wrongfully filed this lawsuit in Texas and therefore, this matter should be dismissed.

Illinois law recognizes the validity of forum selection clauses.

10.  In addition, Illinois recognizes the validity of such a forum selection clause. Forum selection clauses in contracts are *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Calanca v. D&S Mfg Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987); citing *Bremen*, 407 U.S. at 10. The opposing party must show: that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. *Id.* Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain. *Id.* citing *Bremen*, 407 U.S. at 18. Therefore, under Illinois law, to hold a forum selection clause unenforceable, enforcement must either contravene the strong public policy of the forum or the chosen forum must be *"seriously* inconvenient for the trial of the action." *Bremen*, 407 U.S. at 15-16 (emphasis original). However, the "inconvenience" factor is not a valid excuse if the parties freely entered the agreement contemplating

such inconvenience: "[a] choice of forum, which is made during an arm's length negotiation between experienced and sophisticated businessmen, should be honored by the parties and enforced by the courts, absent some "compelling and countervailing reason why it should not be enforced." *Calanca,* 510 N.E.2d at 23; citing *Bremen,* 407 U.S. at 12. Obviously a franchisor-franchisee agreement involves a long-term business relationship and the Franchise Agreement Heideman entered into is no exception. Moreover, it is not unreasonable to expect that Heideman may be hailed into court where Moran is domiciled especially when it was fully contemplated in the Franchise Agreement. Moran being hailed into a Texas court is just as inconvenient to it as its representatives, witnesses and documents are in Illinois, thus, any inconvenience Heideman may allege would be equally borne by Moran if the forum selection clause contained in the Franchise Agreement is not respected. Because Heideman contractually agreed to jurisdiction and venue in the State of Illinois, and Heideman has erroneously chosen to sue Moran in Montgomery County, Texas, this case must be dismissed. *See Phoenix,* 177 S.W.3d at 610. (a motion to dismiss is the proper procedural mechanism for enforcing a forum selection clause that a party to the agreement has violated in filing suit). Alternatively, Moran request that the Court stay this lawsuit until the Illinois litigation is concluded.

11.    The parties to the Franchise Agreement which is the subject of this suit agreed that the forum for litigating disputes under the contract would be Illinois. In addition, while Plaintiff KEI is not a signatory to the Franchise Agreement, best Moran can deduce from its pleading is that it is suing Moran based upon its partial purchase of the assets of the franchise location operated by Heideman and the subject of Plaintiffs' lawsuit. It is alleging, among other things, that Moran made misrepresentations to it in connection with Heideman's Franchise Agreement. KEI is believed to be solely owned and operated by Heideman. The allegations it is making are all connected to the Franchise Agreement between Moran and Heideman and thus, it too should be subject to the forum selection clause necessitating the dismissal of this lawsuit. An agreement to have disputes resolved in the courts of a

certain state is no different from an agreement to be subject to arbitration; both amount to forum selection. The United States Supreme Court has indicated that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). Likewise, the Texas Supreme Court has descirbed an arbitration agreement as "another type of forum-selection clause"; has stated "it see[s] no meaningful distinction between this type of forum-selection clause and arbitration clauses"; and has concluded that the law concerning waiver, and whether an adequate remedy by appeal exists applicable to arbitration agreements, also applies, by analogy, to the same matters in the context of forum-selection clauses. *See In re AIU Ins.*, 148 S.W.3d 109, 116, 121 (Tex. 2004); *see also In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004). Instructional of this situation is the case of *In re FirstMerit Bank, N.A.* in which the Texas Supreme Court held that non-signatories who sued based on a contract subjected themselves to the contract's arbitration clause where the non-signatories' claims were identical to those asserted by the signatories. 52 S.W.3d 749, 755 (Tex. 2001). Further, the Texas Supreme Court has recently recognized that "non-parties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *In re Weekley Homes*, L.P., 180 S.W.3d 127, 129 (Tex. 2005). This is analogous to the situation before this Court in that KEI has sued Moran on the exact same basis and facts as Heideman has sued Moran in connection with and related to the Franchise Agreement. Furthermore, dismissing KEI's claims against Moran will not cause an unnecessary burden on KEI as Heideman is believed to be solely in control of KEI. Consequently, this Court has no choice other than to dismiss all of the Plaintiffs' claims without prejudice to refiling the claims in the proper forum. This matter should be immediately dismissed since dismissal is the appropriate remedy after granting a motion based on a forum selection clause that identifies another state as the proper forum. The denial of a motion based on a valid, enforceable forum selection clause that

specifies another state as the chosen forum is reversible error. *In re AIU Ins. Co.,* 148 S.W.3d at 118. It is subject to mandamus. *Id.* at 120. Plaintiffs can refile their claims in Cook County, Illinois, which is the forum chosen by the parties in their written contract which is the subject of this suit.

12.   Because Heideman contractually stipulated to jurisdiction and venue in the State of Illinois, Moran requests that the Court order that this lawsuit be dismissed without prejudice or that Plaintiffs take nothing by this lawsuit; that Moran recover all reasonable and/or necessary attorneys' fees and costs incurred; and for all other relief this Court deems proper.

FOR THESE REASONS, Defendant Moran Industries, Inc. respectfully requests that this Court grant its Motion to Dismiss or Stay for Forum Non Conveniens and dismiss this lawsuit without prejudice and any other relief, in law and in equity, to which it is justly entitled.

Respectfully submitted,

ZIMMERMAN, AXELRAD, MEYER,
STERN & WISE, P. C.

By:

Leslie K. Hillendahl
State Bar No. 24036778
3040 Post Oak Boulevard, Suite 1300
Houston, Texas 77056-3814
Telephone: (713) 552-1234
Fax: (713) 963-0859

ATTORNEYS FOR DEFENDANT, MORAN INDUSTRIES, INC.

## CERTIFICATE OF SERVICE

I certify that on the 16th day of November, 2007, a true and correct copy of the foregoing Defendants' Response to Plaintiffs' Motion to Quash Depositions was served via [___] certified mail, return receipt requested, [_X_] facsimile, or [____] hand delivery upon the following:

Mr. J. Randall Livingston                     *Via Facsimile: (713) 888-0021*
The Livingston Law Firm, L.L.P.
2603 Augusta, Suite 1000
Houston, Texas 77057

Leslie K. Hillendahl

CAUSE NO. 07-06-05715-CV

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO | § | IN THE DISTRICT COURT OF |
| EQUITY INVESTMENTS, L.L.C. | § | |
| | § | |
| V. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| MORAN INDUSTRIES, INC. AND | § | |
| JAMES HAFEMEISTER | § | 9th  JUDICIAL  DISTRICT |

### Affidavit of Barbara Moran in Support of
### Motion to Dismiss or Stay for Forum Non Conveniens

| | |
|---|---|
| THE STATE OF ILLINOIS | § |
| | § |
| COUNTY OF COOK | § |

BEFORE ME, the undersigned authority, on this day personally appeared, Barbara Moran, who,

after being duly sworn upon her oath, deposed and stated as follows:

1.    "My name is Barbara Moran. I am over the age of 21 years and am competent to make this Affidavit. I have personal knowledge of the facts stated herein unless otherwise noted. Moreover, all facts stated herein are true and correct and are within my personal knowledge.

2.    "I am president of Moran Industries, Inc. It is by virtue of my position as president of Moran Industries, Inc. that I have personal knowledge of the facts contained in this affidavit.

3.    "On or about December 26, 2005, Moran Industries, Inc. ("Moran") entered into a written Franchise Agreement with Plaintiff John Heideman ("Heideman"). Pursuant to the Franchise Agreement, Moran granted Heideman a franchise to operate a Mr. Transmission Service Center at a location to be determined by the parties for a twenty (20) year term.

4.    "Contained in the Franchise Agreement was a clause entitled "Applicable Law." Specifically, this clause of the Franchise Agreement reads: "[t]he parties have finalized this Agreement in the City of Midlothian, County of Cook, State of Illinois, and agree that this contract and their actions hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER licensed hereunder."

Page -1-

5.    "Moran provided Heideman with this Franchise Agreement when Heideman visited Moran in Midlothian, Illinois on December 15, 2005, after having received an offering circular containing a standard franchise agreement, at which time he had the opportunity to review, or have anyone else acting on his behalf, review the Franchise Agreement prior to signing it. Upon execution of the Franchise Agreement by Heideman, it was represented to Moran that he had reviewed the executed Franchise Agreement and expressed no reservations about signing same.

6.    "After executing the Franchise Agreement, Heideman elected to acquire the assets of an existing Mr. Transmission Service Center located at 6821 S. Kirkwood, Houston, Texas 77072 identified as Store No. 510. In addition to purchasing the assets of Store No. 510, Heideman elected to operate his franchise business at the same location. In order to facilitate the purchase of the assets of Store No. 510, Heideman formed Kililanjharo Equity Investments, L.L.C.

7.    "Pursuant to the Franchise Agreement, Heideman agreed, among other things, to report to Moran the gross sales on a weekly basis of his franchise business, to pay Moran a weekly royalty in an amount equal to a specified percentage of gross sales, to participate in Moran's national warranty program and to contribute to Moran's advertising fund on a monthly basis. Since October 2006, Heideman has been in default of the Franchise Agreement and despite written demand from Moran that he cure such defaults, he has failed to do so. This failure to cure and continuing default of the Franchise Agreement caused Moran to file a lawsuit against Heideman in the United States District Court for the Northern District of Illinois - Eastern Division on November 1, 2007.

8.    "Defendant James Hafemeister is also a franchisee of Moran. Mr. Hafemeister executed his most recent franchise agreement with Moran on or about September 8, 2005. Contained in this franchise agreement is a clause identical to that found in Heideman's Franchise Agreement entitled "Applicable Law." This clause again provides that any proceedings between Moran and Hafemeister will be brought in the State of Illinois. Moreover, Mr. Hafemeiser and Moran have had a franchisor-franchisee relationship for approximately four (4) years for which time Mr. Hafemeister has had substantial contacts with the State of Illinois by virtue of his relationship with Moran

9.    "Exhibit "A" to the Moran's Motion to Dismiss or Stay for Forum Non Conveniens is a true and correct copy of an excerpt from the Franchise Agreement between Moran and Heideman, dated December 30, 2005.

10.    "Exhibit "B" to Moran's Motion to Dismiss or Stay for Forum Non Conveniens is a true and correct copy of the Complaint filed on November 1, 2007 by Moran in the United States District Court for the Northern District of Illinois - Eastern Division styled Cause Number 07CV6171; *Moran Industries, Inc. v. John*

Page -2-

*Heideman and Kilimanjharo Equity Investments, L.L.C.*

11.    "Exhibit "C" to the Moran's Motion to Dismiss or Stay for Forum Non
Conveniens is a true and correct copy of an excerpt from the Franchise
Agreement between Moran and James Hafemeister, dated September 8, 2005."

Barbara Moran
President of Moran Industries, Inc.

SWORN TO AND SUBSCRIBED BEFORE ME on the 16th day of November 2007,
to certify which witness my hand and seal of office.

Notary Public - State of Illinois

> OFFICIAL SEAL
> JENNIFER SMART
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:09/18/11

Page -3-

CAUSE NO. 07-06-05715-CV

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO | § | IN THE DISTRICT COURT OF |
| EQUITY INVESTMENTS, L.L.C. | § | |
| | § | |
| V. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| MORAN INDUSTRIES, INC. AND | § | |
| JAMES HAFEMEISTER | § | 9th JUDICIAL DISTRICT |

## Order on Defendant Moran Industries, Inc.'s
## Motion to Dismiss or Stay for Forum Non Conveniens

After considering Defendant, Moran Industries, Inc.'s Motion to Dismiss or Stay for Forum Non

Conveniens, the reply, and arguments of counsel, if any, the Court finds that Moran Industries, Inc.'s

Motion to Dismiss or Stay for Forum Non Conveniens is GRANTED. It is further

ORDERED that Cause Number 07-06-05715-CV; *John Heideman and Kilimanjahro Equity*

*Investments, L.L.C. v. Moran Industries, Inc. and James Hafemeister*; In the 9th Judicial District Court

of Montgomery County, Texas is hereby dismissed without prejudice.

It is so ORDERED.

_____
Presiding Judge

APPROVED AS TO
FORM AND CONTENT:

Leslie K. Hillendahl
State Bar No. 24036778
3040 Post Oak Boulevard, Suite 1300
Houston, Texas 77056-3814
Telephone: (713) 552-1234
Fax: (713) 963-0859

ATTORNEYS FOR DEFENDANT,
MORAN INDUSTRIES, INC.

# FRANCHISE AGREEMENT

This Franchise Agreement made and entered into this 30th day of December, 2005, by and between MORAN INDUSTRIES, INC., an Illinois corporation, with its principal office in Midlothian, Illinois, hereinafter called FRANCHISOR, and John Heideman, whose address is 10422 Den Oak Drive Houston, TX 77065, hereinafter called FRANCHISEE;

## WITNESSETH:

WHEREAS, FRANCHISOR has expended time, effort, and substantial sums of money for the benefit of itself and its franchisees to acquire experience, knowledge and a reputation with the public with respect to the operation of specialized transmission service centers for automobiles, which centers sell automotive products and provide specialized automotive services in a unique and distinctive manner; and

WHEREAS, FRANCHISOR has built up valuable goodwill throughout portions of the United States in the name of "MR. TRANSMISSION" and in various products which are sold under the name of "MR. TRANSMISSION"; and

WHEREAS, the success of MR. TRANSMISSION and all authorized MR. TRANSMISSION franchisees depends upon the continuation of this goodwill and upon the continued operation of specialized transmission service centers adhering to the highest standards of business practices on the part of MR. TRANSMISSION's franchisees, and the maintenance by franchisees of efficient, prompt and courteous service to the public; and

WHEREAS, FRANCHISOR is the owner of the entire right, title and interest, together with all goodwill connected therewith, in and to a widely recognized trade name, trademarks, and service marks, know-how and information, including trade secrets, relating to the operation of specialized transmission service centers; and

WHEREAS, FRANCHISOR is engaged in the business of granting franchises/licenses for the operation of specialized transmission service centers (herein sometimes called "MR. TRANSMISSION SERVICE CENTER(S)" or "Center(s)" or "Service Center(s)") together with the right to use the know-how, decor and color scheme, trademarks, service marks, and trade names owned and developed by FRANCHISOR; and

WHEREAS, FRANCHISEE desires to obtain a license from FRANCHISOR for the use of said know-how, trade names, trademarks, service marks, and other rights in connection with the business of operating a MR. TRANSMISSION SERVICE CENTER in accordance with the highest business and ethical standards; and

WHEREAS, FRANCHISEE recognizes and acknowledges the unique relationship of each franchisee to the other, and to prospective franchisees and to the FRANCHISOR under the trade name of "MR. TRANSMISSION," and further recognizes and acknowledges the mutual benefits to be derived through the maintenance of certain uniform standards and policies set by the FRANCHISOR and derived through open communication and disclosures with the other franchisees and with the FRANCHISOR, and in reliance of each upon the other for the faithful performance of the terms and conditions of this agreement; and

WHEREAS, FRANCHISEE has made a full and complete independent investigation of this opportunity and consulted with any professionals deemed necessary by FRANCHISEE in FRANCHISEE's discretion; and

WHEREAS, FRANCHISOR has made no promises or inducements to FRANCHISEE not reflected in this Franchise Agreement, including but not limited to, projections or promises of any actual or prospective profits of this opportunity.

1



EXHIBIT

A

and all royalties, damages, expenses or other sums owed to FRANCHISOR hereunder and for any other amounts owed by FRANCHISEE to FRANCHISOR. FRANCHISEE agrees to execute any documents, including but not limited to, a UCC-1 (or replacements therefor or extension thereof) reasonably believed by FRANCHISOR to be necessary to perfect said security interest prior to the opening of the MR. TRANSMISSION SERVICE CENTER licensed hereunder, and hereby appoints FRANCHISOR as its attorney-in-fact for the purpose of executing such documents should FRANCHISEE fail so to do.

31.   COMPLIANCE WITH LAWS.   FRANCHISEE agrees to conduct its business in strict compliance with all applicable laws, ordinances, regulations, and other requirements of any federal, state, county, municipal or other governmental authority and will obtain at its own expense all permits, licenses, and other consents for the operation of its business. FRANCHISOR shall immediately upon receipt deliver to FRANCHISEE a copy of any notice or other instrument which alleges a violation of any municipal, state, federal, or any other governmental law, ordinance, rule, regulation, or order of any governmental agency or authority. Further, FRANCHISEE agrees hereby to give notice to FRANCHISOR of any customer complaints made to any consumer agency, including, but not limited to, the Better Business Bureau, State or Federal Agencies, or other such entities, and further agrees to promptly respond to and answer any such complaints, with a copy of such answer to be provided to FRANCHISOR immediately.   Should FRANCHISOR be advised by any such agency of the investigation of FRANCHISEE'S business for any reason whatsoever, FRANCHISEE shall fully cooperate in any request for cooperation in such investigation and shall pay any and all expenses incurred by FRANCHISOR therein, including, but not limited to, investigation fees, fines, penalties, court costs, attorney's fees and interest.

32.   SEVERABILITY.   In the event any of the terms, conditions or clauses of this Agreement shall be determined by a court of competent jurisdiction to be illegal or unenforceable, or be declared by such court to be invalid, then only those terms, conditions, or clauses as so determined by the court shall be affected, and all other terms, conditions and clauses hereof shall remain fully valid and enforceable according to law.

Further, in the event any state or other governmental authority has enacted or promulgated, or subsequently enacts or promulgates, any legislation or regulation which affects, alters or controls the terms and substance of this Agreement, such shall automatically become a part of this Agreement and any portions hereof in conflict therewith shall be amended to conform with such legislation or regulation.

33.   NOTICE.   All notices required hereunder shall be deemed properly given if one party shall mail the same, postage prepaid, to the other by registered or certified mail, Federal Express, UPS, hand delivery or courier service (a) if to the FRANCHISEE, to the address of the MR. TRANSMISSION SERVICE CENTER licensed hereunder and/or his last known address; (b) if to FRANCHISOR, to the principal address of its home office, marked to the attention of the President. In the event any notice sent by FRANCHISOR shall be returned for any reason, then it shall be deemed that FRANCHISEE has received proper notice under the terms of this Franchise Agreement, and FRANCHISOR may proceed to enforce its rights hereunder at law or in equity.

34.   APPLICABLE LAW.   The parties have finalized this Agreement in the City of Midlothian, County of Cook, State of Illinois, and agree that this contract and their actions hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER licensed hereunder.

35.   IMPROVEMENTS TO METHOD OF OPERATION.   FRANCHISOR expressly reserves the right to revise, amend and change, from time to time, the method of operation of MR. TRANSMISSION SERVICE CENTERS, or any part thereof. Any and all such revisions, amendments, changes and improvements developed by FRANCHISOR, FRANCHISEE, or other Franchisees, shall be and become the sole and absolute property of the FRANCHISOR, and FRANCHISOR shall have the sole and

39.   ENTIRE AGREEMENT.   THIS DOCUMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES CONCERNING THE SUBJECT MATTER HEREOF, AND NO REPRESENTATIONS, INDUCEMENTS, PROMISES, OR AGREEMENTS, ORAL OR OTHERWISE, BETWEEN THE PARTIES WITH REFERENCE THERETO AND NOT EMBODIED IN THIS AGREEMENT SHALL BE OF ANY FORCE AND EFFECT EXCEPT FOR OR OTHER THAN THOSE CONTAINED IN THE UFOC. ANY AGREEMENTS MADE HEREINAFTER SHALL BE INEFFECTIVE TO CHANGE, MODIFY, ADD TO OR DISCHARGE IN WHOLE OR IN PART, THE OBLIGATIONS AND DUTIES UNDER THIS AGREEMENT, UNLESS SUCH AGREEMENT IS IN WRITING AND SIGNED BY FRANCHISEE AND BY AN OFFICER OF FRANCHISOR.

ATTEST:                                    MORAN INDUSTRIES, INC.,
                                           an Illinois corporation

_____                  By: _____
Its: _____                 Its: _____
                                               FRANCHISOR


ATTEST:

_____                  _____
                                           John Heideman

                                           December 26, 2005

ADDRESS OF FRANCHISEE:

10422 Den Oak Drive
Houston, TX 77065

If FRANCHISEE is a partnership or a corporation, this Agreement and all obligations, promises and covenants of FRANCHISEE must be guaranteed individually and personally.


Rev. 07/15/05

25

## GUARANTEE

On this 30th day of December, 2005, in consideration of the benefits the undersigned derives from John Heideman ("FRANCHISEE") entering into a Franchise Agreement with Moran Industries, Inc., and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned guarantor(s) hereby guarantees the payment of all fees and costs and the performance by FRANCHISEE or FRANCHISEE's successors or assigns of all covenants and agreements of the above Franchise Agreement. Guarantor shall be directly and primarily liable, jointly and severally, with FRANCHISEE for all covenants and agreements contained within the Franchise Agreement.

Guarantor absolutely and unconditionally covenants and agrees that in the event that FRANCHISEE is unable to, or does not, pay, perform or satisfy FRANCHISEE's obligations in a full and timely manner, for any reason, including, without limitation, the liquidation, dissolution, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment of, or other similar proceedings affecting the status, composition, identity, existence, assets or obligations of FRANCHISEE or the disaffirmance or termination of any of FRANCHISEE's obligations in or as a result of any such proceedings, Guarantor shall pay, perform or satisfy FRANCHISEE's liabilities and that no such occurrence shall in any way reduce or affect Guarantor's obligations hereunder. Upon the occurrence of a default in the prompt payment, timely performance and satisfaction in full of FRANCHISEE's obligations, all of the obligations of the Guarantor shall, at the election of FRANCHISOR, become immediately due and payable. FRANCHISOR need not exhaust its remedies against FRANCHISEE or exercise any of the other remedies available to FRANCHISOR, prior to, concurrently with or after proceeding against Guarantor to collect the full amount of Guarantor's obligations hereunder. The term "FRANCHISEE's obligations" shall mean the payment of all amounts due and the performance and observance of all covenants, conditions and obligations contained in the Franchise Agreement; and all renewals, extensions, amendments, modifications and replacements of any of payments, performance and observance of all covenants, conditions and obligations contained in the Franchise Agreement, and all other indebtedness or obligations of FRANCHISEE to FRANCHISOR, of every kind or nature.

Guarantor hereby expressly waives:

A. Notice of acceptance of this Guarantee, notice of any default under the Franchise Agreement, notice of any matter concerning the financial conditions of FRANCHISEE or notice of the taking of any action or the exercise of any remedy by FRANCHISOR under the Franchise Agreement;

B. Presentment, demand, notice of dishonor, protest and notice of protest, notice of any and all defaults and all other notices whatsoever; and it being the intention of Guarantor to, and Guarantor does hereby, waive all defenses, including those given to sureties or guarantors at law or in equity, other than the actual payment and performance of FRANCHISEE's obligations.

John L. Heideman
John Heideman
December 26, 2005

26

**FILED**

NOV 0 1 2007    NA

*Nov. 1, 2007*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*JH*

| | |
|---|---|
| MORAN INDUSTRIES, INC., ) | |
| ) | 07CV 6171 |
| Plaintiff, ) | JUDGE LEFKOW |
| ) | MAGISTRATE JUDGE MASON |
| v. ) | |
| ) | |
| JOHN HEIDEMAN and KILIMANJHARO ) | |
| EQUITY INVESTMENTS, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Moran Industries, Inc., by its attorneys, and as and for its Complaint against

defendants John Heideman and Kilimanjharo Equity Investments, LLC, states as follows:

### Parties

1.    Plaintiff Moran Industries, Inc. ("Moran Industries") is an Illinois corporation with its

principal place of business in Midlothian, Illinois.

2.    Defendant John Heideman ("Heideman") is a citizen and resident of Houston, Texas.

Defendant Kilimanjharo Equity Investments, LLC ("KEI") is a Texas limited liability company

with its principal place of business in Houston, Texas. Heideman is the sole member of KEI.

### Jurisdiction and Venue

3.    The Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 in

that this is a civil action wherein the parties' are citizens of different States and the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    Venue is proper in this judicial district under 28 U.S.C. § 1391 in that a substantial

part of the of the events or omissions giving rise to the claims asserted herein occurred in this



EXHIBIT
B

judicial district and, in the underlying agreement out of which this action arises, defendants expressly consented to venue in this Court.

### Relevant Facts

5.     On December 30, 2005, Heideman and Moran Industries entered a written franchise agreement pursuant to which Moran Industries granted Heideman a franchise to operate a Mr. Transmission business at a location to be determined by the parties for a twenty year term.

6.     Thereafter, Heideman elected to acquire the assets of an existing Mr. Transmission shop in Kirkwood, Texas, and to operate his franchised business at that location. Heideman formed KEI for purposes of the asset acquisition.

7.     Moran Industries financed defendants' acquisition of the assets of the existing Mr. Transmission business, and Heideman executed a promissory note dated July 28, 2006 and payable to Moran Industries in the principal amount of $119,500.

8.     Under the franchise agreement, defendants agreed, among other things, to report to Moran Industries on its gross sales on a weekly basis, to pay to Moran Industries a weekly royalty in an amount equal to a specified percentage of gross sales, to participate in Moran Industries' national warranty program and to contribute to its advertising fund on a monthly basis.

### Defendants' Breach of the Franchise Agreement and Promissory Note

9.     Since October 2006, defendants have failed to provide Moran Industries with weekly gross sales reports, or to pay to Moran Industries the weekly royalties and monthly advertising fund contributions required under the terms of the franchise agreement, or monthly payments of principal and interest due and owing under the promissory note.

10.    On May 8, 2007, Moran Industries provided defendants with written notice of default and demanded that they cure their defaults under the franchise agreement and promissory note.

11.    Despite Moran Industries' notice of default and demand for cure, defendants have failed and refused to cure their defaults.

COUNT I
BREACH OF FRANCHISE AGREEMENT

12.    Moran Industries repeats and realleges ¶¶ 1 through 11 of its Complaint, as if fully set forth in this ¶ 12.

13.    Defendants' failure and refusal to provide Moran Industries with weekly gross sales reports, and to pay weekly royalties and monthly advertising fund contributions due and owing under the franchise agreement constitute material breaches of the franchise agreement.

14.    As a direct and proximate result of defendants' breaches, Moran Industries has been damaged in an amount equal to all unpaid royalties and advertising fund contributions.

WHEREFORE, Moran Industries demands judgment in its favor and against defendants in an amount to be determined at trial, pre-judgment interest thereon, together with an award of its costs and expenses, including attorneys' fees, incurred in connection with this action as provided for under the parties' franchise agreement.

COUNT II
BREACH OF PROMISSORY NOTE

15.    Moran Industries repeats and realleges ¶¶ 1 through 11 of its Complaint, as if fully set forth in this ¶ 15.

16.    Defendant Heideman's failure and refusal to pay to Moran Industries the amounts of principal and interest due and owing under the promissory note constitutes a material breach of the promissory note.

17.    By reason of defendant's breach of the promissory note, the entire principal balance and accrued interest is due and immediately payable to Moran.

18.    As a direct and proximate result of defendant's breach of the promissory note, Moran Industries has been damaged in an amount equal to the outstanding principal balance and all accrued interest due under the promissory note, totaling in excess of $119,000.

   **WHEREFORE,** Moran Industries demands judgment in its favor and against defendant in an amount in excess of $119,000, to be determined at trial, consisting of the outstanding principal balance and all accrued interest due under the promissory note, pre-judgment interest thereon, together with an award of its costs and expenses, including attorneys' fees, incurred in connection with this action as provided for under the promissory note.

   Dated:    November 1, 2007

                                         **MORAN INDUSTRIES, INC.**

                                         By:_____s/ Andrew P. Bleiman_____
                                              One of its Attorneys

Fredric A. Cohen (ARDC #6198606)
Andrew P. Bleiman (ARDC #6255640)
*CHENG COHEN LLC*
1101 W. Fulton Market, Suite 200
Chicago, Illinois 60607
T  (312) 243-1701
F  (312) 277-3961

## FRANCHISE AGREEMENT

This Franchise Agreement made and entered into this 8th day of **September, 2005**, by and between MORAN INDUSTRIES, INC., an Illinois corporation, with its principal office in Midlothian, Illinois, hereinafter called FRANCHISOR, and **James Hafemeister**, whose address is **3802 Honea Egypt Rd Montgomery, TX 77316**, hereinafter called FRANCHISEE;

### WITNESSETH:

WHEREAS, FRANCHISOR has expended time, effort, and substantial sums of money for the benefit of itself and its franchisees to acquire experience, knowledge and a reputation with the public with respect to the operation of specialized transmission service centers for automobiles, which centers sell automotive products and provide specialized automotive services in a unique and distinctive manner; and

WHEREAS, FRANCHISOR has built up valuable goodwill throughout portions of the United States in the name of "MR. TRANSMISSION" and in various products which are sold under the name of "MR. TRANSMISSION"; and

WHEREAS, the success of MR. TRANSMISSION and all authorized MR. TRANSMISSION franchisees depends upon the continuation of this goodwill and upon the continued operation of specialized transmission service centers adhering to the highest standards of business practices on the part of MR. TRANSMISSION's franchisees, and the maintenance by franchisees of efficient, prompt and courteous service to the public; and

WHEREAS, FRANCHISOR is the owner of the entire right, title and interest, together with all goodwill connected therewith, in and to a widely recognized trade name, trademarks, and service marks, know-how and information, including trade secrets, relating to the operation of specialized transmission service centers; and

WHEREAS, FRANCHISOR is engaged in the business of granting franchises/licenses for the operation of specialized transmission service centers (herein sometimes called "MR. TRANSMISSION SERVICE CENTER(S)" or "Center(s)" or "Service Center(s)") together with the right to use the know-how, decor and color scheme, trademarks, service marks, and trade names owned and developed by FRANCHISOR; and

WHEREAS, FRANCHISEE desires to obtain a license from FRANCHISOR for the use of said know-how, trade names, trademarks, service marks, and other rights in connection with the business of operating a MR. TRANSMISSION SERVICE CENTER in accordance with the highest business and ethical standards; and

WHEREAS, FRANCHISEE recognizes and acknowledges the unique relationship of each franchisee to the other, and to prospective franchisees and to the FRANCHISOR under the trade name of "MR. TRANSMISSION," and further recognizes and acknowledges the mutual benefits to be derived through the maintenance of certain uniform standards and policies set by the FRANCHISOR and derived through open communication and disclosures with the other franchisees and with the FRANCHISOR, and in reliance of each upon the other for the faithful performance of the terms and conditions of this agreement; and

WHEREAS, FRANCHISEE has made a full and complete independent investigation of this opportunity and consulted with any professionals deemed necessary by FRANCHISEE in FRANCHISEE's discretion; and

WHEREAS, FRANCHISOR has made no promises or inducements to FRANCHISEE not reflected in this Franchise Agreement, including but not limited to, projections or promises of any actual or prospective profits of this opportunity.

NOW, THEREFORE, in consideration of the premises and mutual agreements herein contained, FRANCHISOR and FRANCHISEE agree as follows:

1



EXHIBIT
C

received proper notice under the terms of this Franchise Agreement, and FRANCHISOR may proceed to enforce its rights hereunder at law or in equity.

34. APPLICABLE LAW. The parties have finalized this Agreement in the City of Midlothian, County of Cook, State of Illinois, and agree that this contract and their actions hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER licensed hereunder.

35. IMPROVEMENTS TO METHOD OF OPERATION. FRANCHISOR expressly reserves the right to revise, amend and change, from time to time, the method of operation of MR. TRANSMISSION SERVICE CENTERS, or any part thereof. Any and all such revisions, amendments, changes and improvements developed by FRANCHISOR, FRANCHISEE, or other Franchisees, shall be and become the sole and absolute property of the FRANCHISOR, and FRANCHISOR shall have the sole and exclusive rights to copyright, patent, register and protect such improvements in FRANCHISOR'S own name, and FRANCHISEE agrees to abide by any such changes.

36. PRONOUNS AND DEFINITION OF TERMS. All terms and words used in this agreement regardless of the number and gender in which they are used shall be deemed and construed to include any other number, and any other gender, as the context or sense of this agreement or any provision hereof may require, as if such words had been fully and properly written in the appropriate number and gender. In the event that the "Franchisee" consists of two or more individuals or in the event that the Franchisee is a corporation, then such stockholders or individuals shall be jointly and severally liable, and references to the "Franchisee" in this Agreement shall include all such individuals and stockholders.

37. CAPTIONS. The paragraph captions as to contents of a particular paragraph herein are inserted only for convenience, and are no way to be construed as part of this Franchise Agreement, or as a limitation of the scope of the particular paragraph to which they refer.

38. COMPUTERIZED CUSTOMER SERVICE SYSTEM. FRANCHISEE understands and agrees that FRANCHISOR distributes and maintains Trans Plus Management Software in conjunction with the Intranet which FRANCHISOR requires to be in operation in the licensed MR. TRANSMISSION SERVICE CENTER. FRANCHISEE agrees to purchase such system from FRANCHISOR for use in its Service Center. FRANCHISEE agrees to pay any monthly or annual maintenance fee relating to use of FRANCHISOR's Trans Plus Management Software. FRANCHISEE agrees to submit reports via the Intranet and must acquire access to do so.

FRANCHISEE further agrees to attend any training school required by FRANCHISOR in connection with the operation of Trans Plus Management Software, at FRANCHISEE'S sole cost and expense.

In addition to the reports required in the preceding paragraphs FRANCHISEE agrees to furnish FRANCHISOR on a weekly basis, the following reports, including but not limited to (i) Daily/Weekly Business report, (ii) Weekly Business report, (iii) Cash Received report, (iv) Center Summary report, (v) Completed/Not Delivered report, and (vi) Center Activity report via the Intranet.

FRANCHISEE further agrees hereby that FRANCHISOR may, without any further approval being required, poll FRANCHISEE'S computer system and obtain any and all information contained therein, by any necessary method, including but not limited to, direct telephone connection, at any time deemed necessary by FRANCHISOR, whether on a routine basis or under special circumstances.

39. ENTIRE AGREEMENT. THIS DOCUMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES CONCERNING THE SUBJECT MATTER HEREOF, AND NO REPRESENTATIONS, INDUCEMENTS, PROMISES, OR AGREEMENTS, ORAL OR OTHERWISE, BETWEEN THE PARTIES WITH REFERENCE THERETO AND NOT EMBODIED IN THIS AGREEMENT SHALL BE OF ANY FORCE AND EFFECT EXCEPT FOR OR OTHER THAN THOSE CONTAINED IN THE UFOC. ANY AGREEMENTS MADE HEREINAFTER SHALL BE INEFFECTIVE TO CHANGE, MODIFY, ADD TO OR DISCHARGE IN WHOLE OR IN PART, THE OBLIGATIONS AND DUTIES UNDER THIS AGREEMENT, UNLESS SUCH AGREEMENT IS IN WRITING AND SIGNED BY FRANCHISEE AND BY AN OFFICER OF FRANCHISOR.

ATTEST:

_____

Its: _____

MORAN INDUSTRIES, INC.,
an Illinois corporation

By _____

Its: President
FRANCHISOR

ATTEST:

_____

_____
James Hafemeister

ADDRESS OF FRANCHISEE:

3802 Honea Egypt Rd
Montgomery, TX 77316

If FRANCHISEE is a partnership or a corporation, this Agreement and all obligations, promises and covenants of FRANCHISEE must be guaranteed individually and personally.

Rev. 06/15/04

24

**ZIMMERMAN, AXELRAD,**
**MEYER, STERN & WISE, P.C.**
ATTORNEYS AT LAW

3040 POST OAK BOULEVARD
SUITE 1300
HOUSTON, TEXAS 77056-6560

TELEPHONE: (713) 552-1234
FAX: (713) 963-0859
E-MAIL: info@zimmerlaw.com

# Fax Cover Sheet

**To:** Randy Livingston      **Date:** Friday, Nov 16, 2007  04:28PM

**Fax#:** (713)8880021      **Pages:** 25  including this cover sheet.

**From:** Leslie Hillendahl

**Subject:** Heideman v. Moran Industries, Inc. et al

**Message:** Attached please find Moran's Motion to Dismiss.

**Client/Matter#:**

**Transmitting Operator:**  Leslie Hillendahl

*If you have problems receiving this facsimile, please contact the transmitting operator at:*
*(713)552-1234*
*For return telecopying, our facsimile number is (713)963-0859.*

*This material telecopied herewith constitutes privileged and proprietary information and is intended for the exclusive use of the person whose name is indicated above. Any use or dissemination of the material telecopied herewith, except by the person whose name is indicated above, is not authorized. If this telecopy is received in error, the material telecopied herewith should be destroyed immediately and the transmitting operator listed above called at (713)552-1234.*