NO. 07-06-05715-CV

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO | § | IN THE DISTRICT COURT OF |
| EQUITY INVESTMENTS, L.L.C. | § | |
| | § | |
| vs. | § | MONTGOMERY  COUNTY, TEXAS |
| | § | |
| MORAN INDUSTRIES, INC., and | § | |
| JAMES HAFEMEISTER | § | 9TH  JUDICIAL  DISTRICT |

EXHIBIT _____

## AFFIDAVIT OF JOHN HEIDEMAN

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersiged authority, on this day personally appeared John Heideman, being personally known to me and who, after being duly sworn by me, upon his oath stated:

1.     My Name is John Heideman.  I am over 18 years of age and I have personal knowledge of the facts contained in this affidavit.

2.     During the months that preceded December, 2005, I was interested in finding a successful business to pursue in order to provide for myself. During my search I learned of the franchise opportunities offered by Moran Industries, Inc. ("Moran").  During the early days of my investigation, Moran provided me with a Uniform Franchise Offering Circular (UFOC). To my understanding, the UFOC is meant to explain the history and business of Moran, the benefits of owning the franchise, and the earnings which can be made by a franchisee. The UFOC also provided me with the names and number of franchisees whose franchise agreements have been terminated by Moran or who have otherwise left the Moran system. Information regarding the terminated franchisees are reported by state and permit prospective franchisees to evaluate how franchisees have


PLAINTIFF'S
EXHIBIT
A

fared in their regional market. In the UFOC provided to me by Moran, there was no indication that Moran had terminated the franchise license agreement with any Mr. Transmission franchisee during the fiscal years of 2003 - 2005. I now know that is not true. In fact, Moran terminated the license agreement of Eric Kellen on or about February 23, 2004 as shown in a true and correct copy of a letter from Moran to Mr. Kellen, attached to this affidavit. I relied upon the representations made in the UFOC provided to me by Moran. I was misled by the Moran's UFOC as to the success and failures of franchisees by diminishing the risk associated with purchasing a franchise. If Moran would have provided me with accurate information as to the number of franchisees whose license agreements would have been terminated, I would not have entered into the license agreement.

3.      On or about December 24, 2005, I purchased franchise licenses for Mr. Transmission and Milex Car Care by Moran for $32,500.00 without a location for this anticipated business. I executed the Franchise Agreement while sitting at my kitchen t able in Houston, Harris County, Texas. Moran promised to assist me in finding a real estate developer who would present potential future new shop locations for lease. No real estate developers were located who were interested in purchasing land and constructing a new shop building for lease to me. Subsequently, Moran and Hafemeister solicited me to purchase an existing business for sale located at 6821 S. Kirkwood, Houston, Texas. I was advised by Pete Baldine, the Vice President of Moran, that Store No. 510 had been turned around and was consistently doing over $7,000.00 per week in sales. This was not true. The store did not consistently produce $7,000.00 per week in sales. The representation of Pete Baldine materially overstated the sales and profits produced by the shop. Defendants further represented they would provide assistance in the form of on-site consulting services from

2

Hafemeister. In reliance on the representations of Pete Baldine, I agreed to purchase the shop for $192,000.

4.       On July 28, 2006, Kilimanjahro Equity Investments, L.L.C. ("Kilimanjahro") purchased the assets located at Store No. 510 from Micah Consulting Division, L.L.C. ("Micah"), a company which is believed to be solely owned and operated by Hafemeister, for the amount of $192,000.00. The contract was executed by James Hafmeister and myself while sitting in a restaurant located in Houston, Harris County, Texas. The amount of $10,000.00, which at the time of the sale was held by Hafemeister, was purportedly paid to Micah while $30,000.00 was paid to Hafemeister. The remainder of the purchase price was paid by promissory note in the amount of $119,500.00 in favor of Moran signed by James Hafemeister and myself. As part of the agreement to buy the assets, Hafemeister was to provide six (6) months of consulting services to me to ensure the success of the enterprise.

5.       The promissory note was executed by James Hafmeister and myself while sitting in a restaurant located in Houston, Harris County, Texas.

6.       Since assuming control over Store No. 510, I have learned that the transmission shop did not consistently generate $7,000.00 per week in sales and never did while operated by Hafemeister. This I have confirmed by reviewing the books left by James Hafemeister at the shop I now operate. Hafemeister also has not provided the consulting services he promised. Moran has not provided the kind of franchise support as represented prior to the purchase.

7.       I work at the transmission shop almost every day of the week and sometimes seven (7) days a week. Most weeks the transmission shop loses money. I have kept the transmission shop open by utilizing my savings to make up for the shortfall in revenue. I do not have the money to

3

pursue this litigation in Illinois and will effectively be deprived of my day in court if forced to litigate this matter in Illinois. I have visited Illinois _One_ times in the past ten (10) years. The only business contact I have ever had with the State of Illinois pertains to the Franchise Agreement I entered into with Moran made the subject of this lawsuit. I have never filed suit in Illinois.

8.    The venue selection clause was not bargained for between Moran and myself. No one ever discussed the forum selection clause with me. I have never purchased a business before. I was not represented by counsel in the purchase of this franchise.

9.    Almost all of my witnesses are located in the Houston metropolitan area. I believe Pete Baldine and Barbara Moran are the only witnesses which are located in Illinois.

_____          _____
                                    John Heideman

Sworn and subscribed before me, the undesigned authority, on this _12_ day of December, 2007 by John Heideman.



Notary Public,
in and for the State of Texas

My Commission Expires:

THAI QUOC TRUONG
My Commission Expires
October 23, 2010

4