NO. 07-06-05715-CV

| | | |
|---|---|---|
| JOHN HEIDEMAN AND KILIMANJAHRO EQUITY INVESTMENTS, L.L.C. | § § § | IN THE DISTRICT COURT OF |
| vs. | § § | MONTGOMERY COUNTY, TEXAS |
| MORAN INDUSTRIES, INC., and JAMES HAFEMEISTER | § § § | 9TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes JOHN HEIDEMAN and KILIMANJAHRO EQUITY INVESTMENTS, L.L.C. as Plaintiffs, to file this First Amended Original Petition complaining of Defendants, Moran Industries, Inc., James Hafemeister and Micah Consulting Division, L.L.C., and for cause of action would show the Court as follows:

### I. Discovery Control Plan

1.00   Discovery is intended to be conducted under Level 2 of the Texas Rules of Civil Procedure.

### II. Parties

2.00   Plaintiffs are John Heideman and Kilimanjahro Equity Investments, L.L.C.

2.01   Defendant, Moran Industries, Inc., has answered this suit and will be served by serving its attorney of record pursuant to the Texas Rules of Civil Procedure.

2.02   Defendant, Jim Hafemeister, has answered this suit and will be served by serving his attorney of record pursuant to the Texas Rules of Civil Procedure.

2.03   Defendant, Micah Consulting Division, L.L.C, is a limited liability company organized under the laws of the State of Texas which may be served with process by serving its

EXHIBIT C

registered agent, Cameron Minter, at 3802 Honea-Egypt Road, Montgomery, Texas 77316 or wherever else she may be found.

### III. Venue and Jurisdiction

3.00    Venue is proper in this Court because Defendant James Hafemeister is a resident of Montgomery County, Texas. The damages sought in this suit are greater than the minimum jurisdictional limits of this Court.

### IV. Statement of Facts

4.00    Defendant, Moran Industries, Inc., is one of the largest and fastest growing franchisors of automotive aftermarket centers in the country. Included within its family of franchises are Mr. Transmission, Multistate Transmissions, Milex Complete Auto Care, Dr. Nick's Transmissions and Alta Mere. It boasts of great opportunities to succeed in an exciting and growing business within a "family" relationship between the franchisor and the would be franchisee. Defendant James Hafemeister ("Hafemeister") is purportedly a franchisee and area coordinator of Moran. Part of his duties to Moran require him to develop certain markets for Moran. Accordingly, Hafemeister and Moran have a common interest in opening franchise transmission shops as well as keeping franchise transmission shops open. Each profited by the sale of the enterprise made the basis of this lawsuit.

4.01    Moran removed the prior operators and took possession of Mr. Transmission/Milex Car Care, Store No. 510 on or around September 2, 2005. The shop was subsequently turned over to Hafemeister. According to Moran documents, Mr. Transmission/Milex Car Care, Store No. 510, located at 6821 S. Kirkwood, Houston, Texas 77072, was a poorly performing location which was sold many times by Moran and/or Hafemeister to numerous individuals. The prior owners of Store

No. 510 were unable to make it a profitable shop and lost money prior to the conclusion of their ownership of the shop.

4.02   John Heideman, interested in finding a successful business, investigated the franchise opportunities offered by Moran. During the early days, Moran provided Heideman with a Uniform Franchise Offering Circular (UFOC). The UFOC is meant to explain the history and business of Moran, the benefits of owning the franchise, and the earnings which can be made by a franchisee. The UFOC also provides the prospective franchisee with information regarding the names and number of franchisees whose franchise agreements have been terminated by Moran or who have otherwise left the Moran system. Information regarding the terminated franchisees are reported by state and permit prospective franchisee to evaluate how franchisees have fared in their regional market. Unfortunately for Heideman, the information pertaining to terminated franchisees was incomplete and failed to listed individuals whose franchise agreements were terminated during the time period described in the franchise agreement. Relying on the printed word of Moran, Heideman was misled as to the success and failures of franchisees as Moran diminished the risk associated with purchasing a franchise. Furthermore, Defendant Hafmeister had personal knowledge the information contained in the franchise was incorrect and misleading. Hafmeister failed to advise Heideman that the information disclosed was incomplete and failed to correct Moran's partial disclosure, allowing Heideman to be misled by Moran's misrepresentations.

4.03   On or about December 24, 2005, John Heideman purchased franchise licenses for Mr. Transmission and Milex Car Care by Moran for $32,500.00 without a location for this anticipated business. Moran, in return, promised to assist Mr. Heideman in finding a real estate developer who would present potential future "new shop" locations for lease. When no real estate developers could

3

be located who were interested in purchasing land and constructing a new shop building for lease to Heideman, Moran and Hafemeister solicited Heideman to purchase an existing business for sale located at 6821 S. Kirkwood, Houston, Texas, and execute a lease of the premises thereof. Moran boasted the benefits of this location to include an existing commercial client base, a strong, positive, and well-known business presence in the geographical area, and a "faster track" to starting to receive profits sooner because the construction of a new shop building would take six to nine months to complete. Moran and Hafemeister offered the existing business at 6821 S. Kirkwood to Heideman for $192,000 to which Heideman agreed. As part of the agreement to purchase, a part of the sales price was to be financed by a third party lender. However, a lender willing to finance the purchase could not be found due to the length of time (less than 12 months) the business was owned by Hafemeister. Moran, in an effort to save the sale, agreed to finance the sale by having Heideman execute a promissory note. To entice Heideman to consummate the sale, Moran and/or Hafemeister represented that Store No. 510 had been turned around and was consistently doing over $7,000.00 per week in sales. This representation materially overstated the sales and profits produced by the shop. Defendants further represented they would provide assistance in the form of on-site consulting services from Hafemeister.

    4.04    On July 28, 2006, Kilimanjahro Equity Investments, L.L.C. ("Kilimanjahro") purchased the assets located at Store No. 510 from Micah Consulting Division, L.L.C. ("Micah"), a company solely owned and operated by Hafemeister, for the amount of $192,000.00. The amount of $10,000.00, which at the time of the sale was held by Hafemeister, was paid to Micah while $30,000.00 was paid to Hafemeister. The remainder of the purchase price was paid by promissory note in the amount of $119,500.00 in favor of Moran signed by Heideman and Hafemeister. As part

4

of the agreement to buy the assets, Hafemeister was to provide six (6) months of consulting services to Heideman to ensure the success of the enterprise. The promissory note was to be paid by Heideman through the successful business operations of Store No. 510. Micah has since forfeited its charter.

4.05   In reliance upon Moran's and Hafemeister's representations and partial disclosures, Heideman agreed to consummate the purchase of Store No. 510 which was primarily comprised of a leasehold estate, inventory, equipment and a purported client base of nearly thirty (30) commercial accounts.

4.06   Since assuming control over Store No. 510, Heideman has learned that the transmission shop did not consistently generate $7,000.00 per week in sales and never did while operated by Hafemeister. Hefemeister also has not provided the consulting services he promised. In addition, Moran has not provided the kind of franchise support as represented prior to the purchase. Heideman is making every effort to make Store No. 510 profitable but is losing money nearly every month. Store No. 510 simply does not make the money as represented by Moran and Hafemeister.

## V. Statutory Fraud

5.00   Plaintiffs specifically incorporate paragraphs 4.00 through 4.06.

5.01   During the transaction, Defendants made false representations of material fact to Heideman.

5.02   Defendants made the false representations for the purpose of inducing Heideman to enter into a franchise agreement with Moran, purchase the assets of Store No. 510 and execute a promissory note in favor of Moran.

5.03   Plaintiffs relied on Defendants' false representations by entering into the franchise agreement and contract to purchase the assets of the business and the franchise.

5.04   Defendants' false representations directly and proximately caused injury to Plaintiffs.

5.05   Plaintiffs seek unliquidated damages which are in excess of the minimum jurisdictional limits of this Court.

5.06   Defendants violated Texas Business & Commerce Code Section 27.01, which is the basis of this suit, with actual awareness of the falsity of Defendants' representations or promise, which entitled Plaintiffs to exemplary damages under Section 27.01(c).

5.07   Plaintiffs are entitled to recover reasonable and necessary attorney fees, expert witness fees, and costs for copies of depositions under Texas Business & Commerce Code Section 27.01(e).

## VI. Common Law Fraud

6.00   Defendants represented to Plaintiffs the facts contained within paragraph 4.00 through 4.06. These facts were material to Plaintiffs' decision to purchase the assets and franchise which comprise the business known as Store No. 510. These representations were false statements of fact which Defendants knew were false when made.

6.01   Defendants intended for Plaintiffs to rely on the false representations. Plaintiffs did rely on the Defendants' false representations when he decided to enter into the franchise agreement and purchase the assets and franchise which comprise the business known as Store No. 510.

6.02   Defendants' false representations directly and proximately caused injury to Plaintiffs.

## VII. Negligent Misrepresentation

7.00   Plaintiffs specifically incorporate paragraphs 4.00 through 4.06.

6

7.01    Defendants' made the representations complained of in the course of a transaction in which the Defendants' had an interest. The Defendants' made the representations for the guidance of Plaintiffs and others similarly situated. Defendants' representations were misstatements of facts which Heideman justifiably relied on when he decided to consummate the purchase of the assets and franchise license. Defendants did not use reasonable care in obtaining or communicating the information.

7.02    Defendants' misrepresentations proximately caused injury to Plaintiffs, which resulted in the damages described in paragraph XII.

### VIII. Breach of Contract

8.00    Plaintiffs specifically incorporate paragraphs 4.00 through 4.06.

8.01    Plaintiffs entered into agreements with Hafemeister which pertained to the purchase of Store No. 510. Hafemeister agreed to provide consulting services for a six month period. This was to be of great benefit to Plaintiffs as Hafemeister had more than twenty (20) years in the transmission repair business. Unfortunately, Hafemeister never provided the services. This constitutes a breach of contract for which Plaintiffs sue.

8.02    Plaintiffs entered into agreements with Moran which pertained to the franchise license purchased by Heideman. Moran agreed to provide assistance to Heideman, the franchisee. This was represented to Heidemen to be of great benefit to Plaintiffs as a franchisee in the Moran family of franchises as Moran was the leader in automobile franchises and could assist Heideman in growing his business into a successful enterprise. Unfortunately, Moran never provided the services. This constitutes a breach of contract for which Plaintiffs sue.

8.03    Defendants' conduct proximately caused injury to Plaintiffs, which resulted in the damages described in paragraph XIII.

### IX. Agency

9.00    In addition to and without waiving the foregoing, Plaintiffs would show that at the time of the incident mentioned herein, Defendant Hafemeister was the agent of Defendant Moran and was acting within the course and scope of his implied and/or express authority as such agent. Therefore, Defendants Hafemeister and Moran are jointly and severally liable for Plaintiffs' damages under the Doctrine of Respondeat Superior.

### X. Participatory Liability - Conspiracy

10.00    Each Defendant, in combination with the other Defendants, agreed to work together to sell Plaintiffs the business for a price which was much greater than the market value of the business. In order to do so, it was important for the business to show revenues greater than the business earned. Each Defendant knew that the agreed acts would result in harm to Plaintiffs and, in fact, proximately caused injury to Plaintiffs.

### XI. Joint-Enterprise Liability

11.00    Defendant Moran is liable for the acts of Defendant Hafemeister because at the time of Plaintiffs' purchase of Store No. 510, Defendant Moran was engaged in a joint enterprise with Hafemeister. Defendants had an agreement, a common purpose, a community of pecuniary interest in that common purpose, and an equal right to direct and control the enterprise.

11.01    Defendant Hafemeister is liable for the acts of Micah because at the time of Plaintiffs' purchase of Store No. 510, Hafemeister was engaged in a joint enterprise with Micah. Defendants

had an agreement, a common purpose, a community of pecuniary interest in that common purpose, and an equal right to direct and control the enterprise.

## XII. Alter Ego

12.00   Micah was the alter ego of Hafemeister. Its sole purpose was to serve the needs of Hafemesiter and was wholly owned and/or controlled by Hafemeister. Accordingly, it would be unfair and unjust to hold only Micah responsible for the misrepresentations made by Hafemeister.

## XIII. Damages

13.00   Defendants' acts and/or omissions were the producing or proximate cause of the actual and economic damages sought by Plaintiffs. Plaintiffs suffered the loss of all monies invested in the business, whether expended as cash or through the accrual of debt. Plaintiffs' damages are in an amount in excess of the minimum jurisdictional limits of this Court.

13.01   The injuries suffered by Plaintiffs resulted from Defendants' gross negligence, malice and actual fraud, which entitle Plaintiffs to exemplary damages under Texas Civil Practices & Remedies Code Section 41.003(a).

13.02   The injuries suffered by Plaintiffs resulted from Defendants' violation of Texas Business & Commerce Code Section 27.01, which forms part of the basis of this suit, with actual awareness of the falsity of Defendants' representation or promise, which entitles Plaintiffs to exemplary damages under Section 27.01(c).

## XIV. Attorney Fees

14.00   Plaintiffs are entitled to recover from Defendants reasonable attorney's fees for the prosecution of this suit and any and all appeals to any appellate court.

## XV. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer and that upon final hearing, Plaintiffs recover judgment against the Defendants for their damages as they may appear at trial hereof, together with prejudgment and post-judgment interest, costs of court, and such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

THE LIVINGSTON LAW FIRM L.L.P.

By: _____
J. Randall Livingston
State Bar No. 00784485
2603 Augusta, Suite 1000
Houston, Texas 77063
713/888-0011
713/888-0021 (fax)

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all known parties and/or counsel of record in compliance with the Texas Rules of Civil Procedure, on this the __11th__ day of __December__, 2007.

_____
J. Randall Livingston